UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Seneca Smith (#K-76299),** | ) |
| **Plaintiff,** | ) |
| | ) No. 11 C 0190 |
| vs. | ) |
| | ) Hon. Elaine E. Bucklo |
| **Lt. Alvarez, et al.,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, currently an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials and health care providers at the Cook County Jail, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical/mental health needs. More specifically, the plaintiff alleges that correctional officers refused him access to a psychiatric evaluation even though he was expressing suicidal thoughts, resulting in an overdose. This matter is before the court for ruling on the defendants' motion for summary judgment. For the reasons stated in this order, the motion is granted.

### I. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

## II. **FACTS**

The defendants' statement of facts is based almost entirely on the plaintiff's deposition testimony, which I have read. The court has disregarded any statements in the plaintiff's "Declaration" (Exhibit A to his summary judgment brief) that conflict with his sworn deposition testimony. "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007)). The plaintiff may not backpedal from factual assertions he made under oath simply because they have become inconvenient at the summary judgment stage.

Given the considerations stated above, the court views the following facts as uncontested for purposes of the motion for summary judgment:

The plaintiff, Seneca Smith [also known as Roger Williams], was a pretrial detainee in the custody of the Cook County Department of Corrections at all times relevant to this action. (Defendants' Exhibit A, Plaintiff's Deposition, pp. 6, 13.) Defendants Nancy Alvarez, Belinda Blunt,

Nakeea Buchanan-Smith, and William Lopez are all correctional officers of various ranks at the Cook County Jail. (Complaint, pp. 2-2(A).)

The plaintiff claims to suffer from psychotic disorder, acute depression, bipolar disorder, and schizophrenia. (Plaintiff's Exhibit A, Declaration of Seneca Smith, ¶ 2; Plaintiff's Dep., pp. 18-19.) At the time of the events giving rise to this action, the plaintiff was housed in the jail's Division Ten, a medical tier for detainees with acute psychological needs. (Plaintiff's Dep., pp. 21-22.) Inmates in Division Ten receive greater care than inmates in the general population.

The plaintiff's psychiatric medications at that time included Trazodone, Zoloft, Risperdal, Elavil, and Neurontin. (*Id.*, pp. 24-25.) A "majority of the time," the plaintiff took his pills three times a day as prescribed. (*Id.*, p. 26.) However, on some occasions the plaintiff "d[id no]t care" enough to take his medications; instead, he would secretly store the pills in his cell, in violation of jail rules. (*Id.*, pp. 26-27.)

On the morning of March 20, 2009, the plaintiff suffered a mental breakdown of sorts and experienced suicidal thoughts. (*Id.*, p. 16.) He felt not "in the best shape mentally," and a number of things were bothering him that day. (*Id.*)

The plaintiff requested a psychological evaluation, telling defendant Lopez, an officer assigned to his tier, that he did not want to live and that he wanted to kill himself. (*Id.*; Plaintiff's Declaration, ¶ 3.) Lopez allegedly responded, "Stop bullshitting me, you're not getting a psych eval," and continued to let the inmates out of their cells. (Plaintiff's Dep., p. 16; Plaintiff's Declaration, ¶ 3.) When the plaintiff asked Lopez a second time for a psych evaluation, the officer just gave him a strange look and walked away. (Plaintiff's Dep., p. 16.)

About ten minutes later, the plaintiff saw defendant Blunt through an interlock. (*Id.*, p. 27.) He shouted to her that if he did not get a psych evaluation, he was going to swallow a lot of pills and kill himself. (*Id.*) Instead of arranging for a psych evaluation, Blunt escorted the plaintiff to "Intake."

3

(*Id.*, p. 28.) [Neither party explains what "Intake" signifies, but it appears to be some type of isolation/observation cell near supervisors' offices, where an inmate may be monitored. *See* Plaintiff's Dep., pp. 66-68.] Blunt placed the plaintiff in an Intake bullpen and walked away. (*Id.*, p. 28; Plaintiff's Declaration, ¶ 7.) The plaintiff did not get a psych evaluation. (Plaintiff's Dep., p. 28.)

While the plaintiff was in the bullpen, defendant Buchanan-Smith sat down at a nearby desk. (*Id.*) The plaintiff asked Buchanan-Smith, too, for a psychiatric evaluation. (*Id.*) The plaintiff began to cry as he told Buchanan-Smith that he hated his life, might never see his children again, and wanted to die. (*Id.*, p. 28; Plaintiff's Declaration, ¶ 9.) Buchanan-Smith, however, refused to "get involved." (Plaintiff's Declaration, ¶ 9.)

Afterwards, the plaintiff asked defendant Alvarez for a psych evaluation, again threatening to kill himself. (Plaintiff's Dep., p. 29.). Lt. Alvarez told the plaintiff that she was sorry, but that she was tired of seeing him. (*Id.*, p. 29.) The plaintiff acknowledges that he had previously "acted out a lot and stuff like that." (*Id.*) When the plaintiff continued to cajole Alvarez and threaten suicide, she retorted, "I don't care. Kill yourself, then." (*Id.*, p. 30.) Buchanan and another officer laughed at Alvarez' rejoinder. (*Id.*; Plaintiff's Declaration, ¶ 10.)

At that, the plaintiff began to pull pills out of his pocket and started swallowing them. (Plaintiff's Dep., p 30.) The plaintiff ingested both pills of his own that he had saved and pills he had accumulated from other inmates. (*Id.*, pp. 30-31.)

Alvarez and Buchanan stopped laughing [1] when they saw the plaintiff begin taking pills. (*Id.*, p. 30.) Alvarez exclaimed to Blunt, "How did he get those pills?" and "Why hasn't he been searched?" (*Id.*, p. 30.)

The plaintiff estimates that he swallowed 40-50 pills. (*Id.*, p. 31.) As he took the pills, he called out to Alvarez and Blunt that they didn't care, that he might as well be dead, and that he hoped to die. (*Id.*, pp. 30-31.)

About fifteen to twenty minutes later, the plaintiff was rushed to the emergency room at Cermak Health Services for treatment of his drug overdose. (Plaintiff's Dep., p. 32.) Due to complications, he spent the next five days at an outside hospital. (*Id.*; *see also* Plaintiff's Declaration, ¶ 15.)

On March 15, 2010, the plaintiff filed a grievance regarding the purported March 2009 denial of a psychiatric evaluation. (Exhibit 3 to Defendants' Deposition.) The plaintiff wrote, "This is my second grievance concerning what took place [on] 3-20-09." (*Id.*) The administration responded, "The aforementioned allegations are without merit. All psych evaluation requests are taken seriously by staff and is (sic) acted upon immediately. R/Lt. Blunt only has knowledge of detainee Roger Williams through disciplinary reports." (*Id.*) The Appeal Board denied the plaintiff's ensuing appeal, holding: "Original Response to Stand. The Appeal Board cannot substantiate nor deny the alleged unprofessional conduct. The appeal process does NOT award monetary compensation." (*Id.*, p. 2) (emphasis in original).

---

[1] As discussed on pp. 2-3 of this opinion, the plaintiff cannot now change his previous sworn testimony and assert that the officers kept laughing while he swallowed pills, made disparaging remarks, or denied him medical care for up to forty minutes. The plaintiff is bound by his deposition testimony. *See, e.g., Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150-51 (7th Cir. 1998); *Henderson v. Brown*, No. 08 C 3172, 2010 WL 3861056, *7 (N.D. Ill. Sep. 27, 2010) (Pallmeyer, J.).

### III. ANALYSIS

There is no genuine issue as to any material fact, and the court concludes that the defendants are entitled to judgment as a matter of law. The plaintiff satisfied the administrative exhaustion prerequisite to filing suit. However, even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants acted with deliberate indifference to a known, substantial risk of serious harm.

**A. The Plaintiff Completed the Administrative Exhaustion Process**

Having held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the court finds that the plaintiff exhausted administrative remedies prior to bringing suit. As discussed more fully in the court's Minute Order of August 28, 2012, the Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner .. until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner,* 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001). An inmate must comply with the rules established by the State with respect to the form, timeliness, and content of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

In the case at bar, the plaintiff completed the administrative exhaustion process, regardless of whether his [allegedly second] grievance was timely. "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). "Where

6

prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Conyers*, *supra*, and *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)); *see also Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Because the jail administration made a substantive ruling on the grievance at each stage of review, the grievance served its purpose of alerting the jail and inviting corrective action. It is therefore irrelevant either whether the plaintiff filed an earlier, timely grievance, as he maintains, or whether his second grievance was technically untimely. The defendants effectively waived the grievance deadline by considering the grievance on its merits. The plaintiff has demonstrated that he exhausted administrative remedies prior to bringing suit.

**B. The Plaintiff Has Not Shown Deliberate Indifference to a Serious Medical Need**

Nevertheless, the defendants have established that they are entitled to judgment as a matter of law on the merits. The defendants cannot be held liable for failing to prevent the plaintiff's suicide attempt.

By admittedly not taking his medication, the plaintiff created both his own mental health crisis and the means to commit an act of self-harm. The multiple psychotropic medications the plaintiff was prescribed presumably inhibit suicidal ideations. *See, e.g., Romanelli v. Suliene*, 615 F.3d 847, 849 (2010) (quoting with approval the district judge's observation that "the whole point of taking anti-depressants is to allow the person taking them to think and act rationally"). Had the plaintiff taken his prescribed medications rather than hiding them, he might not have wanted to kill himself on the date in question.

Furthermore, had the plaintiff not stockpiled medications, he would not have been able to take an overdose of the pills. As a general rule, where an inmate is the cause of the conditions about which

7

he complains, any constitutional claim is rendered tenuous. *See, e.g., Isby v. Clark*, 100 F.3d 502, 505-06 (7th Cir. 1996) (if an inmate fouled his own cell, his Eighth Amendment claim would "lose a lot of its steam" and he would "not have a cruel and unusual leg to stand on"). But even if the court ascribes the plaintiff's actions to mental illness rather than willful misbehavior, the defendants cannot be held liable for his sudden and unexpected act of taking pills.

The governing law is well settled. A jail "certainly has an obligation to provide for the psychiatric care of its inmates pursuant to its constitutional obligation to address their serious medical needs." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 676 (7th Cir. 2012) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983)). Incarcerated persons are entitled to confinement under humane conditions which provide for their basic human needs. *Rice*, 675 F.3d at 664 (citations omitted). Inmates must, for example, receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Although the Eighth Amendment applies only to convicted persons, pretrial detainees ... are entitled to the same basic protections under the Fourteenth Amendment's due process clause," and the courts apply the same deliberate indifference standard in both types of cases. *Rosario v. Brawn*, 670 F.3d 816, 820-21 (7th Cir. 2012) (quoting *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010)).

In addition to providing for an inmate's basic needs, jail officials have a duty to protect them. *Rice*, 675 F.3d at 669. The Constitution imposes on jail officials a duty to "take reasonable measures to guarantee the safety of the inmates and to protect them from harm..." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832-33). Correctional officials incur liability for the breach of that duty when they are aware of a substantial risk of serious injury to an inmate but nevertheless fail to take appropriate steps to protect him from a known danger. *Guzman v. Sheahan*,

495 F.3d 852, 857 (7th Cir. 2007); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010) (cases involving an alleged failure to prevent assaults by fellow inmates).

Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). In suicide cases, the objective element "is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). However, in the case at bar, the plaintiff cannot meet the subjective prong.

> Where the harm at issue is a suicide or attempted suicide, the subjective component of an Eighth or Fourteenth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk. *Collins*, 462 F.3d at 761 (citing *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (defendant must be aware of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing the act). With respect to the first showing, "it is not enough that there was a danger of which a prison official should have been aware," rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack*, 226 F.3d at 529 (emphasis added). In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life. *Id.*; *Sanville*, 266 F.3d at 737 (issue is whether the defendant was subjectively "aware of the substantial risk that [the deceased prisoner] might take his own life"). Liability cannot attach where "the defendants simply were not alerted to the likelihood that [the prisoner] was a genuine suicide risk." *Boncher ex rel. Boncher v. Brown County*, 272 F.3d 484, 488 (7th Cir. 2001).

*Collins*, 462 F.3d at 761.

In *Collins*, the inmate told a correctional officer that he wanted to see the prison crisis counselor because he was feeling suicidal. The officer relayed the request up the chain of command, but as the request was passed along, the information that the inmate was feeling suicidal was apparently dropped and the message was transmitted as a generic request to see the crisis counselor.

9

When an officer told the inmate that a counselor had been called and would respond as soon as she could, the inmate responded that he was "all right" and could wait until the counselor arrived. Tragically, however, during the next hour or so the inmate hanged himself in his cell using a bed sheet.

The U.S. Court of Appeals for the Seventh Circuit affirmed the district court's entry of summary judgment in favor of prison officials. Some of the defendant officers were unaware that the plaintiff had expressed any suicidal impulses; the record reflected that inmates "often request meetings with crisis counselors for reasons both serious and mundane, and sometimes make such requests as a means of manipulating prison staff," *Collins*, 462 F.3d at 761, as the plaintiff in this case has himself observed. The last defendant was absolved of liability because the plaintiff had reassured the officer that there was no emergency.

The case at bar presents a slightly different scenario in that the defendants are all alleged to have essentially ignored the plaintiff's pleas. But the officers did at least move the plaintiff to the more visible bull pen, and they were caught completely unawares when the plaintiff produced his secret stash of pills. Deliberate indifference requires a showing of "more than mere or gross negligence." *Collins*, 462 F.3d at 762 (quoting *Matos*, 335 F.3d at 557; *Estate of Novack*, 226 F.3d at 529). The required showing is "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Collins*, 462 F.3d at 762 (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)). To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety. *Matos*, 335 F.3d at 557. A defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] ... his action must be **reckless** before § 1983 liability can be found." *Collins*, 462 F.3d at 762 (quoting *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003) (emphasis added).

This incident cannot be considered in a vacuum: the court examines the totality of the medical care provided in assessing whether prison officials have been deliberately indifferent to an inmate's

serious medical needs. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999); *Smith v. Hallberg*, No. 11 C 0188, 2012 WL 4461704, *8 (N.D. Ill. Sep. 25, 2012) (Bucklo, J.). The plaintiff in the instant case was housed in a mental health care unit. The defendants in this case were faced with an inmate who confesses that he is exceptionally troublesome and exasperating. Even though the plaintiff threatened to commit suicide, nothing in the record indicates that the defendants were aware that he had any way of doing so; the plaintiff concedes that the officers were thunderstruck when he pulled the pills from his pocket and began taking them. Liability does not attach where, as here, the defendants were not alerted to the likelihood that the plaintiff was a genuine suicide risk, as opposed to simply acting out because he did not get his way. *Compare Boncher*, 272 F.3d at 488 (defendants were not liable for suicide where the officers thought the plaintiff was joking about his previous suicide attempts and mental state). Moreover, the defendants' swift action when the plaintiff actually followed through on his threat further belies any inference of deliberate indifference.

The record, in short, is devoid of evidence to support the plaintiff's claim that the defendants acted with deliberate indifference to his health, safety, or medical needs. Even though the plaintiff threatened suicide if he did not see a counselor, the evidence does not support a finding that the defendants were aware that there was a *bona fide* risk of the plaintiff following through on his threats. Even viewing the record in the light most favorable to the plaintiff, the facts do not reflect either that the defendants failed to take appropriate steps in the face of a substantial risk of known harm, or that they failed to take proper steps after the plaintiff swallowed pills.

## IV. <u>CONCLUSION</u>

In sum, there is no genuine dispute as to any material fact, and the court concludes that the defendants are entitled to judgment as a matter of law.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

For the foregoing reasons, the defendants' motion for summary judgment [#77] is granted and the plaintiff's motion to deny summary judgment [#89] is denied. The clerk is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56. The case is terminated. The ruling date of October 17, 2012, at 9:30 a.m. is vacated.

_____

Elaine E. Bucklo
United States District Judge

Date: October 15, 2012

12